**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
fbottini@bottinilaw.com
Albert Y. Chang (SBN 296065)
achang@bottinilaw.com
Yury A. Kolesnikov (SBN 271173)
ykolesnikov@bottinilaw.com
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile:   (858) 914-2002

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| NEWPORT SURFRIDER, LLC, on behalf of itself and all others similarly situated, | Case No. _____ |
| Plaintiff, | <u>**CLASS ACTION**</u> |
| vs. | **COMPLAINT** |
| AMPLIFY ENERGY CORPORATION, a Delaware corporation, BETA OPERATING COMPANY LLC, dba BETA OFFSHORE, a Delaware LLC, SAN PEDRO BAY PIPELINE COMPANY, a California corporation, and JOHN DOES 1 through 10, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

CLASS ACTION COMPLAINT

## I.     INTRODUCTION

1.      Plaintiff Newport Surfrider, LLC ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following against Defendants Amplify Energy Corp., Beta Operating Company LLC dba Beta Offshore, San Pedro Bay Pipeline Company, and John Does 1 through 10 (collectively "Defendants"), based on personal knowledge, information and belief, and, where applicable, the investigation and research of counsel.

## II.    NATURE OF THE ACTION

2.      This complaint has its genesis in the pollution of the waters of San Pedro Bay adjacent to the Southern California coastline. On October 2, 2021, and reportedly as early as October 1, 2021, an underwater oil pipeline about 5 miles off the coast of Huntington Beach, California ruptured, releasing thousands of barrels of crude oil into the Pacific Ocean. The rupture created a toxic, 13-square-mile, and migrating, slick off the shore of Huntington Beach. The oil slick has since spread east and south, depositing oil on beaches and into coastal wetlands rich in biodiversity.

3.      The 17-mile long, 41-year-old pipeline ("Old Bay Pipeline") from where this oleaginous slick (the "Spill") emanated rests mostly atop the Pacific Ocean floor about 98 feet under the surface of the water; water of vital and irreplaceable significance to human and other biological life as well as to human commerce. About 16-inches in diameter, the steel pipe is encased in concrete and traverses San Pedro Bay, an inlet of the Pacific Ocean. The Old Bay Pipeline, operated by Beta Offshore and/or San Pedro Bay Pipeline Company ("San Pedro Bay"), both subsidiaries of Houston-based Amplify Energy Corporation ("Amplify"), connects a series of three

CLASS ACTION COMPLAINT

offshore oil rig platforms with an onshore oil storage, processing and transportation facility in the Port of Long Beach.

4.     In Orange County, California, the county closest to the rupture, the Spill has deposited crude oil along stretches of shoreline and wetlands in Newport Beach, Laguna Beach, Dana Point, and Huntington Beach, killing fish and birds, threatening ecologically sensitive wetlands, and closing numerous beaches in what officials are calling an environmental catastrophe.



Photo:  Workers walk past dead marine life in Newport Beach on October 6, 2021.

5.     On October 4, 2021, in response to this human-made catastrophe, Governor Gavin Newsom proclaimed a state of emergency (KM_C454e-20211004211817_(ca.gov)) in Orange County to support the emergency response to the oil spill off the coast of Huntington Beach that originated in federal waters.  "The state is moving to cut red tape and mobilize all available resources to protect public health and the

CLASS ACTION COMPLAINT

1   environment," said Governor Newsom. "As California continues to lead the

2   nation in phasing out fossil fuels and combating the climate crisis, this

3   incident serves as a reminder of the enormous cost fossil fuels have on our

4   communities and the environment."



Photo:  AP photo of Southern California Oil Spill.

6.    At the Governor's direction, the state has deployed personnel from the Department of Fish and Wildlife's Office of Spill Prevention and Response and the Governor's Office of Emergency Services to the incident command in Long Beach to closely coordinate with the U.S. Coast Guard, local agencies and responsible parties on the response, cleanup and mitigation of the oil spill. In addition, agencies from across the administration are on the ground actively supporting various elements of the response, including staff from California State Parks, California Volunteers, California State Lands Commission, CAL FIRE and the Office of

CLASS ACTION COMPLAINT

1   Environmental Health Hazard Assessment, among others.

2   7.   Just days later, on Thursday, October 7, 2021, officials in San
3   Diego County issued a related public health advisory recommending that
4   residents   avoid   contact   with   beach   "tar   balls"   (Incident   Page
5   (sdcountyemergency.com)). This was in response to reports of clumps of tar
6   that have begun appearing on beaches in the San Diego County
7   communities of Oceanside, Encinitas and Carlsbad.  The extent of the crude
8   oil's southern migration is evolving and remains unclear.  As of October 10,
9   2021, Shoreline Cleanup and Assessment Teams continue to closely monitor
10  and clean up numerous beaches in both San Diego County and Orange
11  County (Incident Page (sdcountyemergency.com)).

12  8.   Further, as a precautionary measure, Officials of the Department
13  of Fish and Wildlife deployed a protective boom across the mouth of the
14  Agua Hedionda Lagoon ("AH Lagoon") in Carlsbad. The AH Lagoon is a
15  vital but threatened coastal wetland ecosystem that provides a home to
16  hundreds of fish, mammals, birds, plants and other species. The AH Lagoon
17  also feeds into a desalinization plant. On a daily basis, the plant provides
18  approximately 50 million gallons of water to San Diego County.

19  9.   The Spill has also required massive expenditures on cleanup
20  efforts:

21       [the remainder of this page is intentionally left blank].

22
23
24
25
26
27
28  CLASS ACTION COMPLAINT



Photo:  Workers clean up oil in Newport Beach on 10/6/21.

10.     The pipeline (the "Old Bay Pipeline" or the "Pipeline") is owned and/or operated by Defendant Amplify and its subsidiaries, Defendants Beta Offshore and San Pedro Bay (collectively, the "Pipeline Defendants"). The Pipeline rupture sent tens of thousands of gallons of toxic crude oil flowing over some of Southern California's most beautiful beaches and waters.

11.     Before the Pipeline Defendants shut off the Pipeline, it had discharged crude oil in an amount initially estimated to be in excess of one hundred thousand gallons. Current estimates range between 25,000 and 131,000 gallons. Oil coated the shoreline and clung to rocks, sand, wild animals, and marine life. The Spill has polluted beaches and damaged coastal private properties.  The damage to Plaintiff and the related Class members is sudden in onset, massive in scope, indeterminate in duration, and cross-species in impact.

CLASS ACTION COMPLAINT

12.     The beachfront properties along the Southern Coast of California, like coastal properties throughout the state, are highly valuable. The property owners enjoy the unspoiled sand and water, direct access to fishing, surfing, kayaking, and other activities.

13.     This depressingly familiar story could have been averted had the Pipeline Defendants: (a) adequately maintained the Pipeline, making it less susceptible to corrosion and rupture, (b) adequately monitored the Pipeline for indications of damage that could lead to future leaks, and (c) been properly prepared and promptly acted when the spill began, including when a low-pressure alarm first indicated that there was a problem.

14.     Regular maintenance of pipelines is a crucial step that owners of pipelines must take in order to avoid exactly the disaster that occurred with the Pipeline.

15.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 on behalf of itself and as a representative of others similarly situated to recover significant economic losses they have incurred and will continue to incur because of Defendants' oil spill.

III.     PARTIES

16.     Plaintiff Newport Surfrider, LLC is a citizen of Orange County, California.   Plaintiff is a business that operates ocean tours in Orange County, California, including whale and dolphin tours, Pacific Ocean sunset tours, and tours of Newport Harbor. Plaintiff employs captains and other employees and independent contractors in the provision of its services. Plaintiff also owns water craft used in its business.   Due to the beach closures in Orange County, California that have resulted from the oil spill caused by Defendants, Plaintiff has lost money and profits and its business

CLASS ACTION COMPLAINT

1   will continue to be affected in the future.

2       17.     Defendant   Amplify   Energy   Corporation   ("Amplify"),   is   a

3   Delaware corporation with its headquarters and principal place of business

4   in Houston, Texas. Pursuant to 28 U.S.C. § 1332(c)(1), Defendant Amplify is

5   therefore a citizen of Delaware and Texas.

6       18.     Defendant Beta Operating Company, LLC, dba Beta Offshore

7   ("Beta") is a Delaware LLC, with its headquarters and principal place of

8   business in Houston, Texas. It is a subsidiary of Amplify. Under the Class

9   Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(10), Defendant

10  Beta is therefore a citizen of Delaware and Texas.

11      19.     Defendant San Pedro Bay Pipeline Company ("San Pedro Bay")

12  is a California corporation with its corporate offices in Texas.  San Pedro

13  Bay is a subsidiary company of Amplify.  San Pedro Bay operates the

14  Pipeline which transports crude oil from Elly and other rigs to an oil storage

15  and transportation facility in Long Beach, California.

16      20.     Defendants John Does 1-10 are persons whose identity is not yet

17  known to Plaintiff, but who, upon information and belief, are responsible

18  for the injuries suffered by Plaintiff.  Plaintiff will amend the complaint

19  once the identities of the Doe defendants are ascertained.

20      21.     On information and belief, Plaintiff alleges that Amplify, Beta,

21  San Pedro Bay, and John Does 1-10 are jointly and severally liable for the

22  actions and conduct enumerated herein that form the basis of the following

23  claims for negligence and/or wrongdoing.

24      22.     On information and belief, Defendants John Does 1 through 10,

25  are corporations, partnerships, or entities, the names and addresses of

26  which are currently unknown.  Plaintiff reserves the right to obtain leave of

27

28  8

CLASS ACTION COMPLAINT

court to amend this Complaint to specify the identities of Defendants John Does as the information becomes available.

23.    Defendants own and operate the Pipeline, a crude oil pipeline system approximately 17 miles long, beginning offshore at Platform Elly and related platforms and ending onshore at the Beta Pump Station.

## IV.    JURISDICTION AND VENUE

24.    This court has subject matter jurisdiction over this case. This Court has diversity jurisdiction over this action pursuant to CAFA, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant; there are more than 100 class members; and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  Further, this court has federal question jurisdiction because this case involves rights and obligations that arise under federal laws, including 43 U.S.C. § 1331.

25.    This Court has personal jurisdiction over Defendants because they are registered to conduct business in California, they regularly do conduct business in California, and otherwise have sufficient minimum contacts with California.

26.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and/or emanated from this District, and because Defendants have caused harm to Class members residing in this District.

/ / /

/ / /

/ / /

/ / /

9

CLASS ACTION COMPLAINT

1

2

## V.      FACTS

### A.    <u>The Orange County Coast</u>

27.    The Orange County Coast is a special place with blue water, iconic piers, famous surf breaks, and beautiful beaches.

28.    Much of the economic life in this region revolves around the coastal areas and beaches. Thousands of people in Orange County depend on the ocean and beaches for work and play. Beachfront property owners enjoy direct access to blue waters and magnificent coastline, and residents walk the beaches, fish from the shores, swim, surf, kayak and use and enjoy their properties.

29.    Now contamination by Defendants' oil spill has undermined the health of the environment, and the coastal beachfront real property.

30.    Threats to the Southern California environment and economy from oil development are not new. In 1969, a blowout at Union Oil's off-shore drill rig sent millions of gallons of oil into the waters and onto the beaches of Santa Barbara County.  The blowout killed thousands of birds, dolphins, fish, and other marine life, and swamped beaches along the coast with oil. The litigation that followed effectively led to the birth of the environmental movement and legislation to protect the environment and the public from oil and gas operations on and off shore.

31.    Six years ago, the Plains oil pipeline spill near Santa Barbara decimated fishing areas and oil washed up on beaches from Santa Barbara to Orange County. While state and local governments and some companies have taken significant steps to make the production and transportation of crude oil safer and more reliable, Defendants do not have a respectable track record.

CLASS ACTION COMPLAINT

**B.** __The Failure of Defendants' Pipeline__

32.     The San Pedro Bay Pipeline is approximately 17 miles in length, beginning offshore at Platform Elly and traveling onshore to the Beta Pump Station in the City of Long Beach, California. The offshore portion of the Pipeline is approximately 15 miles in length and the onshore portion is approximately 2 miles in length.

33.     The San Pedro Bay Pipeline traverses a High Consequence Area (HCA) as defined in 49 C.F.R. § 195.450 and an ecologically unusually sensitive area as defined in § 195.6.

34.     The Pipeline was installed in 1980. It has a 16-inch nominal diameter with 0.500-inch wall thickness for the offshore portion and 0.375-inch wall thickness for the onshore portion. The Pipeline consists of X-42 grade pipe, and has a double-submerged arc-welded longitudinal seam. The pipe coating type is concrete. The onshore portion is cathodically-protected and the offshore portion has sacrificial anodes on the pipeline.

35.     Prior to the rupture, the San Pedro Bay Pipeline was reported to be operating at approximately 300-400 psig. The maximum operating pressure (MOP) of the San Pedro Bay Pipeline is 1152 psig.

36.     Reports about a possible oil spill off the coast of Huntington Beach were left on a federal hotline on Friday night, October 1, 2021, nearly

CLASS ACTION COMPLAINT

16 hours before the U.S. Coast Guard and local officials publicly confirmed the spill's existence, according to government records.[1]

37.     At approximately 02:30 PDT on October 2, 2021, Defendants' control room personnel received a low-pressure alarm on the San Pedro Bay Pipeline, indicating a possible failure.

38.     Despite the presence of this alarm, it was over three hours before Defendants reported, at approximately 06:01 PDT on October 2, 2021, that the San Pedro Bay Pipeline had been shut down.

39.     At 09:07 PDT on October 2, 2021, more than six hours after the initial alarm, and three hours after Defendants shut down the Pipeline, Defendants reported the incident to the National Response Center ("NRC"), indicating that there was a release of crude oil in the vicinity of its pipeline near Platform Elly. The U.S. Coast Guard subsequently submitted NRC reports reporting the presence of oiled marine life and dead fish, and reporting that the failure may have been caused by a crack in the Pipeline.

40.     The exact failure location is currently unknown, but preliminary reports indicate the failure location is approximately 5 miles offshore at a depth of approximately 98 feet. On October 6, 2021, Defendants' CEO,

--------

[1] https://www.ocregister.com/2021/10/04/first-reports-of-oil-slick-off-huntington-beach-came-day-before-public-was-notified/ , last visited October 7, 2021.

CLASS ACTION COMPLAINT

Martyn Willsher stated that a 4,000 ft section of the pipeline appears to have a 13-inch split along the length of the pipe.[2]

41.   Various state and federal agencies responded to the scene, including the U.S. Coast Guard, BSEE, NTSB, PHMSA, CDFW, and local law enforcement. Private oil spill response organizations under contract with Defendants also responded to the incident.

42.   While the precise timeline of events is currently under investigation, it appears that Defendants did not promptly act to respond to signs of the Pipeline's failure or notify relevant government agencies. That apparent delay and inadequate response runs contrary to Defendants' oil spill response plan.

43.   Despite the efforts of volunteers and professional responders, the spill affected numerous Marine Protected Areas as well as beaches from Huntington Beach and south.

44.   As the oil spread, so did its terrible consequences. Fish, birds, and marine mammals died after being covered in oil or exposed to the oil's toxic compounds. Tar balls and oil sheen from Defendants' oil spill fouled beaches far to the south of Huntington Beach.

---

[2] https://losangeles.cbslocal.com/2021/10/06/huntington-beach-oil-spill-section-pipeline-damaged-moved-100-feet-along-ocean-floor/ , last visited October 7, 2021.

CLASS ACTION COMPLAINT

45.     In Southern California, these environmental impacts translate to profound economic impacts. The spill's pollution of coastal private properties impairs the ability of property owners to use and enjoy their land.

46.     Finally, the oil spill presents a serious risk to human life. Residents are being warned to avoid all areas affected by the spill, due to risk of fumes.

47.     Long term, the impacts may be as-yet-unknown, but they are no less certain. Even with the best spill response, toxic oil will remain in the environment for a long time, continuing to harm the environment, pollute beaches, and wreak economic havoc on residents and businesses.

**C.      <u>Defendants Have a History of Reckless Compliance Violations</u>**

48.     While this spill is a disaster, it is not an accident. Defendants wantonly disregarded the health and safety of the public and environment by operating the Pipeline when they knew they did not have proper safety systems in place.

49.     Between 2013 and 2014, federal regulators fined Beta a total of $85,000 for violations that, in two instances, led to injuries of workers. Since 2010, Beta has also been issued 125 noncompliance violations by federal

CLASS ACTION COMPLAINT

inspectors, according to a database maintained by the federal Bureau of Safety and Environmental Enforcement, which is responsible for inspecting offshore oil platforms.[3]

50.    Defendants have profited and continue to profit from their failure to comply with safety requirements and guidelines. Their decision not to maintain, repair and/or replace the Pipeline, or keep it safe from damage, demonstrates Defendants' willingness to prioritize profits over public safety.

51.    Defendants knew of the extremely high risk of catastrophic injury inherent in the transportation of oil through a pipeline. Defendants avoided taking action to protect Plaintiff and the Class from apparent risks the Pipeline presented. Defendants demonstrated a callous and reckless disregard for human life, health, and safety by operating the Pipeline without proper maintenance and safety equipment.

52.    This disregard for the rights of others and the rule of law is part of a pattern and practice that Defendants have demonstrated. Defendants acted with such indifference to the consequences of their misconduct, with such recklessness, and as part of a well-established pattern, as to be willful,

---

[3] https://www.data.bsee.gov/Company/INCs/Default.aspx , last visited October 7, 2021.

CLASS ACTION COMPLAINT

1  malicious, and oppressive, and in disregard of the rights of the Plaintiff and
2  the Class, thereby meriting an award of punitive and/or exemplary
3  damages against Defendants.

4      53.   In short, Defendants operated a pipeline that failed. The
5  communities through which it transports oil, and most particularly the
6  beachfront property owners and renters, suffer the consequences.

7      54.   This lawsuit therefore seeks to compensate the victims of the
8  spill and to ensure that Defendants are prevented from causing additional
9  damage to the state economy, the environment, and real property residents
10  in the future.

11  **VI.    PLAINTIFF'S FACTS**

12      55.   Plaintiff is a family owned and operated whale watching and
13  adventure tour provider in Orange County California. Plaintiff employs
14  experienced sea captains to guide expeditions on the Pacific Ocean and
15  Newport Harbor and employs various independent contractors to provide
16  mechanic and other boat related services. Plaintiff offers whale watching
17  tours, dolphin watching tours, sunset cruises, and cruises of Newport
18  Harbor and the Pacific Ocean. Plaintiff's entire business is operated on or
19  adjacent to Orange County beaches that depend on the beaches remaining
20  open for Plaintiff to derive business and income from local residents and
21  tourists.

22      56.   Due to the beach closures in Orange County, California that
23  have resulted from the oil spill caused by Defendants, Plaintiff has lost
24  money, wages and profits and its earnings and profits will continue to be
25  adversely affected in the future.

16

CLASS ACTION COMPLAINT

## VII.    CLASS ACTION ALLEGATIONS

57.    Plaintiff asserts this class action individually and on behalf of all other similarly situated class members pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1)(A), and 23(b)(3).   This action is asserted and properly maintained as a class action because the requirements of numerosity, adequacy, typicality, and commonality set forth in the Rules are satisfied by Plaintiff.  Plaintiff is therefore qualified and entitled to act as a representative party pursuant to Federal Rule of Civil Procedure 23(a).

58.    As detailed in the individual counts below, Plaintiff seeks to represent a Class defined as follows:

> **All persons, real and corporate, and other entities experiencing business, personal and/or commercial losses in the Orange County and San Diego County, California coastal cities, including but not limited to Huntington Beach, Newport Beach, Dana Point, Laguna Beach, Oceanside, Carlsbad, Encinitas, Del Mar and La Jolla, beginning on or around October 1, 2021 and ongoing as a result of the Spill.**

Excluded from the above Class is any entity in which Defendants have a controlling interest, and Defendants' officers and directors.  Also excluded from this Class is any judge or judicial officer presiding over this matter and the members of his or her immediate family and judicial staff.

59.    Due to the nature of the Spill, the Class is ascertainable.   The Class, as defined, categorizes groups of unnamed plaintiffs by setting forth a set of common characteristics sufficient to allow a member of that group to self-identify as having a right to recover based on the description. The description includes reference to a specific time frame and governmental

CLASS ACTION COMPLAINT

1    and geographic subdivisions.  Either direct, or otherwise proper and
2    sufficient, notice of this action may be provided to the Class members
3    through notice published in local and national newspapers, or other
4    appropriate publications.

5         60.   The Class satisfies the numerosity requirement. The affected
6    beach cities enumerated above, spanning two Counties with millions of
7    residents and thousands of businesses, have been directly affected by the
8    Spill.  Huntington Beach, directly adjacent to the Spill, is home to over
9    10,000 businesses.[4]  The Class is therefore likely to exceed tens of thousands
10   of members, making the Class so numerous that a joinder of all members
11   would be impracticable.

12        61.   Common questions of law and fact abound. A specific
13   community of interests in the questions of law or fact that affects all
14   members of the Class exists. Common questions of law or fact are
15   substantially similar to, and predominate over, questions that may affect
16   only individual Class members.  This action is open to a class-wide
17   calculation of damages by utilizing expert testimony to determine damages
18   applicable to all Class members. Common questions of law and fact include
19
20   _____
21   [4] Taken from Huntington Beach's website:
22   https://www.huntingtonbeachca.gov/business/ last visited October 7, 2021.
23
24
25
26
27                                          18
28   CLASS ACTION COMPLAINT

the following:

A.    Whether Defendants are strictly liable for the harm created by the Spill from the pipeline;

B.    Whether Defendants have engaged in an ultrahazardous activity as defined by the relevant statutes;

C.    Whether Defendants have created a public nuisance, and the nature and extent of that nuisance;

D.    Whether Defendants have created a private nuisance, and the nature and extent of that nuisance;

E.    Whether the Defendants were negligent in their construction, repair, maintenance, supervision and operation of the Old Bay Pipeline;

F.    Whether Defendants owed any duties to Class Members, and the extent of those duties;

G.    Whether Defendants breached one or more of those duties to Class Members;

H.    Whether Defendants' actions and/or inactions were a substantial factor in damaging Class Members;

I.    Whether Defendants' Spill and surrounding actions caused physical and/or economic damages to Class Members' businesses, and the extent of those damages;

J.    Whether Defendants violated any California statutes, including California's laws related to the environment and to business and employment; and

K.    The calculation of damages incurred by the Class Members.

19

CLASS ACTION COMPLAINT

62.     Plaintiff's claims are typical of the members of the Class.  The factual evidence regarding the Spill and related actions and the legal theories regarding Defendants' actions and inactions related to the Spill are substantially the same for Plaintiff and the other members of the Class.

63.     Plaintiff will fairly and adequately protect the interests of the Class members.  Plaintiff has suffered harm from the Spill. Plaintiff has now retained competent, knowledgeable, and experienced class action litigation counsel to ensure fair and adequate representation of the Plaintiff and the Class.  Plaintiff and its counsel intend to prosecute this action carefully and vigorously.

64.     Prosecution of separate actions by separate Class members creates a risk of inconsistent or varying judgments and adjudications with respect to individual Class members that could establish incompatible standards of conduct for the party (or parties) opposing the Class and could lead to unnecessary, expensive, and repetitious trials of the numerous common questions of fact and law.

65.     Common questions of law and fact predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the dispute. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. Because the injury suffered by any individual Class member may be relatively small, the time, expense and burden of individual litigation makes it virtually impossible for Plaintiff and Class members individually to pursue actions for the Defendants' wrongful conduct related to the Spill. If individual Class members could afford individual litigation, it could be

CLASS ACTION COMPLAINT

unduly burdensome to the courts in which those actions would proceed. The class action expedient is preferable to individual litigation because it provides the economies of scale inherent in a single, comprehensive adjudication.

## VIII.     CAUSES OF ACTION

<u>First Claim for Relief</u>

**Strict Liability under Lempert-Keene-Seastrand Oil Spill Prevention and Response Act, Government Code Section 8670,** *et seq.*

66.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

67.     The Lempert-Keene-Seastrand Oil Spill Prevention and Response Act ("the Act") provides that "[a] responsible party, as defined in Section 8670.3, shall be absolutely liable without regard to fault for any damages incurred by any injured party which arise out of, or are caused by, the discharge or leaking of oil into or onto marine waters." Cal. Gov't Code Section 8670.56.5(a).

68.     The Pacific Ocean and the waters off the California Coast are "marine waters" as defined in Section 8670.3(j).

69.     Defendants are "responsible part[ies]," which includes "the owner or transporter of oil or a person or entity accepting responsibility for the oil."

70.     The oil transported through the Pipeline is "oil" within the meaning of the Act, which defines "oil" as "any kind of petroleum, liquid hydrocarbon, or petroleum products or any fraction or residues therefrom," including "crude oil."

71.     As the responsible parties for the oil transported through Line

CLASS ACTION COMPLAINT

901, the Pipeline Defendants are absolutely liable under the Lempert-Keene-Seastrand Act.

72.     On or before October 2, 2021, Defendants discharged or leaked crude oil into the Pacific Ocean, and are therefore absolutely liable without regard to fault for all damages that Plaintiff and the Class sustained or will sustain. That discharge was not permitted by state or federal law.

73.     The Act entitles a plaintiff to recover a wide variety of damages, including, but not limited to, loss of subsistence use of natural resources; injury to, or economic losses resulting from destruction of or injury to, real or personal property, which shall be recoverable by any claimant who has an ownership or leasehold interest in property; loss of taxes, royalties, rents, or net profit shares caused by the injury, destruction, loss, or impairment of use of real property, personal property, or natural resources; and loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources. *See generally* Cal. Gov't Code Section 8670.56.5(h).

74.     The contamination illegally caused by the discharge of crude oil into or upon area beaches and the Pacific Ocean caused injury to and destruction of real or personal property, as well as impairment of earning capacity of Plaintiff and the Class.

75.     Plaintiff has ownership or leasehold interests in real or personal property damaged by Defendants' oil spill; Plaintiff's livelihood and earning capacity, and the livelihoods of its employees and independent contractors, depend directly on the integrity of the pipeline not rupturing and damaging real and personal property and the natural resources in and around the Pacific Ocean, and along the California coastline; and/or

CLASS ACTION COMPLAINT

Defendants' damage to real property, personal property, and natural resources has caused Plaintiff a loss of taxes, royalties, rents, or net profit; or all of the above, Defendants are liable to Plaintiff and the Class under the Act.

76.     The injury, destruction, loss, and/or impairment of usability of these natural resources has caused Plaintiff and the Class to lose profits, and will cause future losses of profits and/or impair their earning capacities.

77.     The lasting effects of contamination related to the discharge of toxic crude oil into the Pacific Ocean and coastal areas, which Plaintiff and the Class rely on, requires that Plaintiff and the Class continue future monitoring and testing activities in order to ensure that the toxic oil from the spill does not further contaminate and degrade Plaintiff's property, and that their earning capacity is not impaired.

**Second Claim for Relief**
**Strict Liability for Ultrahazardous Activities**

78.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

79.     At all times herein, Defendants were the owners and operators of the Pipeline.

80.     At all times relevant to this action, Defendants had supervision, custody, and control of the Pipeline.

81.     At all times herein, Defendants were under a continuing duty to protect the Plaintiff and the Class from the harm caused by the Pipeline.

82.     Defendants were engaged in ultrahazardous activities by transporting flammable, hazardous, and toxic oil through the Pipeline.

83.     Plaintiff and the Class have suffered harm from the discharge of

23

CLASS ACTION COMPLAINT

toxic oil from the Pipeline and have suffered immediate, direct and negative impacts from the spill.

84.     The injuries sustained by Plaintiff and the Class as a result of the oil spill were the direct and proximate result of Defendants' activities.

85.     The harm to Plaintiff and the Class was and is the kind of harm that would be reasonably anticipated as a result of the risks created by transporting flammable, hazardous, and toxic oil in a Pipeline which was not properly or safely maintained in close proximity to the Pacific Ocean.

86.     Defendants' operation of the Pipeline and its failure was a substantial factor in causing the harms suffered by Plaintiff and the Class.

87.     Due to Defendants' strict liability, Plaintiff and Class members are entitled to recover actual damages.

88.     The acts and omissions of Defendants were conducted with malice, fraud, and/or oppression as set out in this Complaint.

### Third Claim for Relief
### Negligence

89.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

90.     Defendants owed a duty to Plaintiff and the Class to exercise reasonable and ordinary care. That duty arose generally as well as from, among other things, federal, state, and local laws, ordinances and regulations that require Defendants to operate a pipeline in a manner that does not damage public health and safety, or pose a threat to real property. These laws include, but are not limited to, the Lempert-Keene Act, Government Code Section 8670, *et seq*., the Porter-Cologne Act, Water Code Sections 13000, *et seq*., Cal. Fish & Game Code Section 5650, *et seq*., the Federal Clean Water Act, 33 U.S.C. § 1251 *et seq*., and state and federal spill

CLASS ACTION COMPLAINT

response and notification laws.

91.     Defendants breached their duty to Plaintiff and the Class by, among other things, failing to install reasonable safety equipment to prevent a spill, failing to detect and repair corrosion, and failing to promptly respond to and contain the spill.

92.     Defendants, in the exercise of reasonable care, should have known that the Pipeline could rupture or otherwise fail, and spill significant amounts of oil, and cause damage to beachfront real property.

93.     In addition, Defendants' violations of the above-cited statutes, ordinances, and/or regulations resulted in precisely the harm to Plaintiff that the laws listed above were designed to prevent, and Plaintiff and the Class are members of the class of persons for whose protection those laws were adopted.

94.     At all times herein mentioned, Defendants negligently, wantonly, carelessly and/or recklessly maintained and operated the Pipeline.

95.     As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have sustained damages. Those damages take primarily two forms: short-term and long-term. As a direct and legal cause of the Defendants' wrongful acts and omissions herein set forth above, Plaintiff and the Class have suffered and will continue to suffer real property damage, economic harm, injury to earning capacity, and losses.

96.     The short-term damages include loss of use and enjoyment of beachfront and oceanfront real property because of oil polluting the beaches and waters, as well as potential lost rental income and profits from vacationers and tourists visiting Southern California.

CLASS ACTION COMPLAINT

1    97.   The long-term damages include physical injury to property in

2  which Plaintiff has a direct ownership interest.

3    98.   The oil spill's long-term damages may also diminish the values

4  of oceanfront and beachfront real properties along the coast that have been

5  polluted by Defendants' oil.

6    99.   The acts and omissions of Defendants, and each of them, were

7  conducted with malice, fraud, and/or oppression as described in this

8  Complaint.

### Fourth Claim for Relief
### Violations of California's Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

100.  Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

101.  Defendants have engaged in and continue to engage in unfair competition in violation of California's Unfair Competition Law ("UCL").

102.  Defendants' conduct constitutes "fraudulent" business practices within the meaning of the UCL in that members of the public have been harmed.

103.  Defendants' conduct amounts to "unfair" business practices as the UCL forbids all wrongful business activities in any context in which they appear. Moreover, as described above, Defendants' practices offend established public policies, are immoral, unethical, oppressive, and unscrupulous. The impact of Defendants' practices is in no way mitigated by any justifications, reason, or motives. Defendants' conduct has no utility when compared to the harm done to Plaintiff and members of the Class.

104.  Defendants' conduct is "unlawful" because it violated laws including but not limited to the Lempert-Keene Act, Government Code

CLASS ACTION COMPLAINT

Section 8670, *et seq*., the Porter-Cologne Act, Water Code Sections 13000, *et seq*., Cal. Fish & Game Code Section 5650, *et seq*., the Oil Pollution Act, and local, state, and federal spill notification laws, and the oil spill response plans required by federal, state, and local laws. Federal, state, and local officials have announced investigations into Defendants' conduct related to the spill, so it is reasonable to infer that Defendants may have violated other laws.

105. As a direct and proximate result of Defendants' unfair, fraudulent, and unlawful methods of competition and unfair and deceptive acts or practices, Plaintiff and the Class have sustained injury in fact and have lost money or property, including but not limited to a diminishment in assets and value of assets, for which they seek injunctive relief. The relief sought includes, but is not limited to, an order requiring Defendants to do the following: restore the area real properties and beaches impacted by the spill; repair short- and long-term damages to coastal properties; repair reputational damage done to coastal property values; and prevent Defendants from operating the Pipeline without adequate safety mechanisms and ongoing monitoring, to ensure that no future spill occurs.

106. Plaintiff and the Class have no adequate remedy at law for the injuries that will result from failure of the Defendants to safely replace and/or repair, operate, and maintain the Pipeline and it could be impossible for Plaintiff and the Class to determine the precise amount of damages they will suffer if Defendants' conduct is not restrained and Plaintiff is forced to institute a multiplicity of suits to obtain adequate compensation for injuries and harm to the Class.

107. The acts and omissions of Defendants were done with malice,

CLASS ACTION COMPLAINT

fraud, and/or oppression as described in this Complaint.

### Fifth Claim for Relief
#### Public Nuisance

108.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

109.   Defendants have created a condition that is harmful to health and interferes with the comfortable enjoyment of life and property by discharging hundreds of thousands of gallons of crude oil into the Pacific Ocean and onto the California coastline.

110.   That nuisance affects a substantial number of individuals similarly situated to the Plaintiff, such as citizens of and visitors to Southern California beaches, and real property owners and lessees.

111.   Defendants' oil spill is a condition which would reasonably annoy and disturb an ordinary person, as shown by, for example, the health impacts warned of by the county, the community outrage in response to the spill, and the nationwide interest in the spill's impacts on the Southern California Coast.

112.   The seriousness and gravity of that harm outweighs the social utility of Defendants' conduct. There is little or no social utility associated with releasing tens of thousands of gallons of oil into the unique ecological setting of Southern California.

113.   Plaintiff and the Class suffered harm and injury to their economic livelihood, which they did not consent to and which is different from the type of harm suffered by the general public.

114.   The above acts and omissions also created a public nuisance vis-à-vis the Plaintiff and the Class, interfering with the property rights of Plaintiff and the Class, and rights incidental to those property rights.

CLASS ACTION COMPLAINT

115. The acts and omissions of Defendants described herein were also in violation of various California state laws including but not limited to the Lempert-Keene Act, Government Code Section 8670, *et seq.*, the Porter-Cologne Act, Water Code Sections 13000, *et seq.*, Cal. Fish & Game Code Section 5650, *et seq.*, and local laws.

116. Defendants' violations of those statutes directly and proximately caused, and will cause, injury to the Plaintiff and the Class of a type which the statutes are intended to prevent. Plaintiff and the Class are of the class of persons for whose protection these statutes were enacted.

117. As a direct and legal cause of Defendants' wrongful acts and/or omissions herein set forth above, Plaintiff and the Class have suffered and will suffer economic harm, injury, and losses.

118. To remedy the harm caused by Defendants' nuisance, Plaintiff will seek public injunctive relief, including, but not limited to, an order requiring Defendants to do the following: restore the area real properties and beaches impacted by the spill; repair short and long term damages to coastal properties; repair reputational damage done to coastal property values; and prevent Defendants from operating the Pipeline without adequate safety mechanisms and ongoing monitoring, to ensure that no future spill occurs.

119. In maintaining the nuisance, which is ongoing, Defendants are acting with full knowledge of the consequences and damage being caused, and the acts and omissions of Defendants, were done with malice, fraud, and/or oppression as described in this Complaint.

### Sixth Claim for Relief
### Negligent Interference with Prospective Economic Advantage

120. Plaintiff incorporates by reference each and every prior and

CLASS ACTION COMPLAINT

subsequent allegation of this Complaint as if fully restated here.

121.   Plaintiff and the Class have existing or prospective economic relationships with citizens of Southern California, visitors to Orange County, and other individuals and organizations doing business in and related to Orange County.

122.   These relationships have a reasonably probable likelihood of resulting in future economic benefits or advantages to Plaintiff and the Class.

123.   Defendants knew or should have known of these existing and prospective economic relationships.

124.   Defendants owed a duty to Plaintiff and the Class to avoid negligent or reckless conduct that would interfere with and adversely affect the existing and prospective economic relationships of Plaintiff and the Class.

125.   Defendants breached that duty to Plaintiff and the Class by, among other things, failing to install and/or maintain reasonable safety equipment to prevent such a spill, failing properly to maintain the pipeline in a safe condition, and failing to promptly respond to and contain the spill.

126.   Defendants knew or should have known that, if they failed to act with reasonable care, the existing and prospective economic relationships of Plaintiff and the Class would be interfered with and disrupted.

127.   Defendants were negligent and failed to act with reasonable care as herein set forth above.

128. Defendants engaged in wrongful acts and/or omissions as herein set forth above, including but not limited to their violations of

CLASS ACTION COMPLAINT

1    federal, state, and local laws that require Defendants to operate the Pipeline

2    in a manner that does not damage public health and safety.

3        129.   As a direct and proximate result of Defendants' wrongful acts

4    and/or omissions, Defendants negligently and recklessly interfered with

5    and disrupted the existing and prospective economic relationships of

6    Plaintiff and the Class.

7        130.   As a direct and proximate result of Defendants' wrongful acts

8    and/or omissions, Plaintiff and the Class have suffered and will suffer

9    economic harm, injury, and losses as herein set forth above.

**Seventh Claim for Relief**

**Trespass**

11       131.   Plaintiff who has a real property interest in water front property

12   brings this on behalf of itself and all other similarly situated land owners or

13   lessees. Plaintiff incorporates by reference each and every prior and

14   subsequent allegation of this Complaint as if fully restated here.

15       132.   Defendants discharged a polluting matter beyond the boundary

16   of Plaintiff's and Class Members' real property in such a manner that it was

17   reasonably foreseeable that the pollutant would, in due course, invade

18   Plaintiff's and Class Members' real property and cause harm.

19       133.   By discharging polluting matter, Defendants entered, invaded,

20   and intruded on the real properties of Plaintiff and the Class Members

21   without privilege, permission, invitation, or justification.

22       134.   Defendants had a duty to use reasonable care not to enter,

23   intrude on, or invade Plaintiff's and Class Members' real properties.

24   Defendants also owed a duty to Plaintiff and members of the Class to

25   exercise reasonable care in the manufacture, maintenance, and operation of

26   the Pipeline.

27

28

CLASS ACTION COMPLAINT

135.   Defendants had a heightened duty of care to Plaintiff and the Class because of the great danger associated with transporting oil so near to pristine coastal residential areas and nearby real properties along the Southern California Coast.

136.   Defendants breached the duty they owed to Plaintiff and members of the Class when they failed to exercise reasonable care in the manufacture, maintenance, and operation of the Pipeline, which conduct resulted in entry, intrusion, or invasion on Plaintiff's and Class Members' real properties.

137.   Defendants knew or should have known that their conduct would foreseeably result in a disastrous oil spill, causing damage to the real properties and economic interests of persons in the area affected by the spill.

138.   As a direct and proximate result of Defendants' trespass, Plaintiff and Class Members have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, property damage, diminution of value of real estate, loss of income and other economic loss.

139.   Defendants' wanton or reckless conduct, as described herein, entitles Plaintiff and Class Members to punitive damages.

### Eighth Claim for Relief
### Private Nuisance

140.   Plaintiff who has a real property interest in water front property brings this claim on behalf of itself and all other similarly situated land owners or lessees. Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

141.   Defendants' actions and inactions caused, maintained, and/or

32

CLASS ACTION COMPLAINT

permitted the contamination alleged in this action by its negligence, intentional or otherwise, actionable acts, and/or omissions.

142.   Defendants created the contamination at issue, which is harmful to both human health and the environment and interferes with Plaintiff's comfortable use and enjoyment of the real property in which it has a possessory interest.

143.   Defendants were, at all relevant times, in sufficient control of the Pipeline to have known of the threatened release of oil and associated hydrocarbons and to have prevented the resulting contamination. Defendants knew or should have known that their operation of the failed pipeline would have, and did, cause the contamination described herein.

144.   Despite knowledge and forewarning, Defendants failed to take reasonable steps to prevent the failure which resulted in the contamination at issue.

145. Defendants failed to take reasonable steps to abate the contamination at issue, which continues to spread to previously uncontaminated areas. The contamination is, however, abatable, and, therefore, it is continuing in nature. This also confirms that Defendants have knowingly maintained the nuisance, *i.e.* the contamination at issue. In the alternative, the contamination and/or resulting diminution in property value is not reasonably abatable and permanent in nature.

146.   Plaintiff did not consent to the ongoing and/or permanent damage to the use and enjoyment of its property as a result of Defendants' actions and inactions.

147.   After having a reasonable opportunity to do so, Defendants failed to take reasonable measures to properly abate the contamination

CLASS ACTION COMPLAINT

described herein. In the alternative Defendants are unable to reasonably abate the contamination and resulting diminution of value of Plaintiff's property.

148.   As a direct and proximate cause, Defendants' acts and omissions have caused substantial actual damage and immediate and ongoing diminution of the value of Plaintiff's real property and the property of the Class and/or have caused substantial permanent diminution of value of Plaintiff's property.

149.   As a result, Plaintiff has and will continue to suffer damages, both economic and otherwise.

150.   The contamination described herein constitutes a nuisance within the meaning of Section 3479 of California Civil Code.

151.   Plaintiff is informed and believes, and on that basis alleges, that the contamination is continuing and abatable and/or the contamination and/or diminution in value of Plaintiff's property is permanent and not reasonably abatable.

152.   As a proximate result of the nuisance, Plaintiff has and will suffer damages of a continuing and/or permanent nature.

## Ninth Claim for Relief
### Nuisance Per Se

153.   Plaintiff who has a real property interest in water front property brings this claim on behalf of itself and all other similarly situated land owners or lessees. It incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

154.   The contamination constitutes a nuisance within the meaning of Section 3479 of California Civil Code.

155.   Plaintiff is in the class of persons protected under these statutes

34

CLASS ACTION COMPLAINT

from Defendants and their violations thereof due to the fact that Defendants have, at all times relevant, owned, operated, maintained, supervised and/or controlled the Pipeline.

156.   Defendants violated California Civil Code section 3479 by their failure to properly abate the contamination, and by allowing contamination to continue to spread.

157.   As a proximate result of the nuisance, Plaintiff has and will suffer damages of a continuing and/or permanent nature.

## Tenth Claim for Relief
### Permanent Injunction

158.   Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

159.   Beginning on or about October 2, 2021, and continuing to the present time, Defendants, and each of them, wrongfully and unlawfully caused oil to spill onto surrounding areas, into the Pacific Ocean, and onto coastal real properties.

160.   In the absence of an injunction, Defendants will continue to violate the rights of Plaintiff and the Class. Defendants, and each of them, have refused and still refuse to refrain from their wrongful conduct.

161.   Defendants' wrongful conduct, unless and until enjoined and restrained by order of this court, will cause great and irreparable injury to Plaintiff and the Class.

162.   Plaintiff and the Class have no adequate remedy at law for the injuries that will result from failure of the Defendants to safely replace and/or repair, operate, and maintain their pipeline and it could be impossible for Plaintiff and the Class to determine the precise amount of damages they will suffer if Defendants' conduct is not restrained and

CLASS ACTION COMPLAINT

Plaintiff is forced to institute a multiplicity of suits to obtain adequate compensation for injuries and harm to the Class.

## IX.      REQUEST FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, requests judgment against Defendants as follows:

A.      For an order certifying the Class and appointing Plaintiff as a representative of the Class and appointing the lawyers and law firm representing Plaintiff as counsel for the Class;

B.      For an order permanently enjoining Defendants from operating the Pipeline without adequate safety and response measures and ongoing monitoring;

C.      For all recoverable compensatory, statutory, and other damages sustained by Plaintiff and the Class, including all relief allowed under applicable laws;

D.      For costs;

E.      For both pre-judgment and post-judgment interest on any amounts awarded;

F.      For appropriate injunctive relief, including public injunctive relief; *i.e.*, an order requiring Defendants to do the following: require Defendants to restore property values impacted by the spill; repair reputational damage done to oceanfront and beachfront real property along California's Southern Coast; and an order requiring Defendants to operate the Pipeline in such a way to ensure no further spills and resulting losses of jobs;

G.      For treble damages insofar as they are allowed by applicable laws;

CLASS ACTION COMPLAINT

H.     For appropriate individual relief as requested above;

I.     For payment of attorneys' fees and expert fees as may be allowable under applicable law, including Cal. Gov't Code section 8670.56.5(f) and the Private Attorneys General Act;

J.     For exemplary or punitive damages under Cal. Civ. Code Section 3294 for the oppression, fraud, and malice alleged above; and

K.     For such other and further relief, including declaratory relief, as the Court may deem just and proper.

## X.     DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  October 11, 2021

Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)

*s/ Francis A. Bottini, Jr.*

Francis A. Bottini, Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone: (858) 914-2001
Facsimile:   (858) 914-2002
Email: fbottini@bottinilaw.com
         achang@bottinilaw.com
         ykolesnikov@bottinilaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT